UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

JOSE A. DE JESUS,                       :

                    Plaintiff,          :       13 Civ. 2251 (AJN)(HBP)

    -against-                           :       REPORT AND
                                                RECOMMENDATION
COMMISSIONER OF SOCIAL SECURITY,        :

                    Defendant.          :

-----------------------------------X


            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE ALISON J. NATHAN, United States

District Judge,


I.   Introduction


            Plaintiff, Jose A. De Jesus, brings this action pursu-

ant to section 205(g) of the Social Security Act (the "Act"), 42

U.S.C. § 405(g), seeking judicial review of a final decision of

the Commissioner of Social Security ("Commissioner"), denying his

application for supplemental security income ("SSI") benefits.

Both plaintiff and the Commissioner move for judgment on the

pleadings pursuant to Fed.R.Civ.P. 12(c) (Docket Items 19 & 24).

For the reasons set forth below, I respectfully recommend that

plaintiff's motion for judgment on the pleadings (Docket Item 19)

be granted and that the matter be remanded pursuant to sentence

four of 42 U.S.C. § 405(g) for further proceedings consistent with this report and recommendation.  I further recommend that the Commissioner's motion for judgment on the pleadings (Docket Item 24) be denied.

II.   <u>Facts</u>

   A.   <u>Procedural Background</u>

        Plaintiff applied for SSI benefits on February 9, 2011 (Tr.[1] 85-91).  Plaintiff's application was denied on April 6, 2011 (Tr. 47-50).  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"); on December 19, 2011, plaintiff, appearing <u>pro se</u>, testified before ALJ Paul Heyman (Tr. 1-22).  On February 15, 2012, ALJ Heyman issued a decision finding that plaintiff was disabled on February 1, 2011 and that plaintiff's disability ended on February 9, 2012 (Tr. 25-38).  His decision became the Commissioner's final decision on March 13, 2013 when the Appeals Council denied plaintiff's request for review (Tr. 42-46).

        Plaintiff commenced this action on April 4, 2013, seeking review of the Commissioner's decision (Docket Item 2).

---

        [1]"Tr." refers to the administrative record that the Commissioner filed with its answer, pursuant to 42 U.S.C. § 405(g) (Docket Item 14).

B.   <u>The Medical Record</u>[2]

Plaintiff alleges that he became disabled on November 1, 2010 due to "acute on chronic systolic heart failure" (Tr. 85, 108).  In the disability report accompanying his application, plaintiff wrote that he could no longer lift heavy objects, walk long distances or climb more than five flights of stairs (Tr. 99).  Plaintiff also wrote that he was experiencing pain in his back and feet, which prevented him from reaching, kneeling or sitting or standing for long periods of time (Tr. 103-04).  At his hearing, plaintiff testified that his chest would tighten when he walked long distances, especially in cold air (Tr. 15).  Plaintiff indicated that while he did not cook for himself, he cared for his personal hygiene, performed household chores and was able to use public transportation (Tr. 101-02).

Plaintiff testified that he had not worked in more than ten years (Tr. 11).  He also stated that he had used cocaine and marijuana until he was hospitalized in December 2010 and was informed of his heart condition (Tr. 11-12, 14).

Plaintiff testified that he was receiving treatment at Lincoln Hospital ("Lincoln") from Dr. Samina Ashraf and had also

---

[2]I recite only those facts relevant to my review.  The administrative record more fully sets out plaintiff's medical history (Docket Item 14).

3

received treatment at Bellevue Hospital Center ("Bellevue") (Tr. 14, 20).  Plaintiff was also treated at Lincoln for diabetes and for his vision, and was scheduled to undergo a surgical procedure on his right eye at Lincoln in January 2012 (Tr. 18-20).  The testimony and documents associated with plaintiff's application reflect that plaintiff was prescribed the following medications for his conditions:  Albuterol, Colace, Coreg, Cyanocobalamin, Januvia, Lanoxin, Lasix, Lisinopril, Micronase, Norvasc, Thiamine and Zocor; plaintiff had also been prescribed a blood glucose testing device (Tr. 129-30).

The record indicates that plaintiff was admitted to Lincoln on December 12, 2010 with a severe cough and shortness of breadth (Tr. 135).  Plaintiff complained of paroxysmal nocturnal dyspnea,[3] orthopnea,[4] swelling in his lower limbs and occasional chest pain (Tr. 135).  Upon examination, plaintiff exhibited rales,[5] edema in his legs and high blood pressure (Tr. 135).  The attending physician diagnosed plaintiff as suffering from acute

_____

[3]Paroxysmal nocturnal dyspnea is "a form of respiratory distress related to posture (especially reclining at night) and usually attributed to heart failure with pulmonary edema." Dorland's Illustrated Medical Dictionary ("Dorland's") at 520 (27th ed. 1988).

[4]Orthopnea is a "difficult[y] breathing except in an upright position." Dorland's at 1192.

[5]A rale is "an abnormal respiratory sound . . . indicating some pathologic condition." Dorland's at 1409.

diastolic congestive heart failure, uncontrolled hypertension, chronic kidney disease related to his hypertension, cocaine and alcohol abuse, mild liver dysfunction and macrocytic anemia[6] related to the alcohol abuse and referred plaintiff to the intensive care unit (Tr. 213, 217, 220, 232).  An echocardiogram[7] taken on December 13, 2010 revealed a severely dilated left ventricle with an ejection fraction[8] of 23% (Tr. 379-80).  The echocardiogram also revealed that plaintiff's right ventricular systolic function was moderately-to-severely reduced (Tr. 380). On December 16, 2010, plaintiff was diagnosed as suffering from onset systolic congestive heart failure with right ventricular systolic dysfunction and was transferred to Bellevue for further treatment (Tr. 135, 364).

At Bellevue, plaintiff's condition improved somewhat, but he still exhibited an ejection fraction of 23% and moderately-to-severely reduced right ventricular systolic func-

---

[6]Macrocytic anemia is "a name applied to a category of anemias, of varying etiologies, characterized by larger than normal red cells, absence of the customary central area of pallor, and an increased mean corpuscular volume and mean corpuscular hemoglobin." Dorland's at 77.

[7]An echocardiogram is a record that records "the position and motion of the heart walls or the internal structures of the heart and neighoring tissues . . ." Dorland's at 526.

[8]Ejection fraction is "a measure of ventricular contractility . . . normally 65 +/- 8 per cent; lower values indicate ventricular dysfunction." Dorland's at 659.

tion (Tr. 139, 142, 156).  The examining physician diagnosed plaintiff as suffering from congestive heart failure (Tr. 140). Plaintiff was discharged on December 21, 2010 (Tr. 139, 156).

On January 19, 2011, plaintiff was readmitted at Lincoln with shortness of breadth (Tr. 155).  An echocardiogram taken on that date revealed dilation in plaintiff's left ventricle and an ejection fraction of 25% (Tr. 262).  Imaging of plaintiff's chest taken two weeks earlier showed cardiomegaly[9] (Tr. 490).  Plaintiff was placed on a ventilator, on which he remained for four days (Tr. 237, 268).  A second echocardiogram taken on January 20, 2011 revealed that plaintiff's left ventricle was now only mildly dilated and had an ejection fraction of 25% to 30% (Tr. 383).  It also revealed moderately-to-severely reduced left ventricular function and mildly reduced right ventricular function (Tr. 383).  Imaging of plaintiff's chest showed signs of pneumonia (Tr. 178).  Plaintiff was diagnosed with acute on chronic systolic heart failure and pneumonia (Tr. 174, 237).  Plaintiff was discharged on January 28, 2011 (Tr. 240-43).

From February 2011 through the date of the ALJ's decision, plaintiff underwent treatment with Dr. Samina Ashraf at

---

[9]Cardiomegaly is "cardiac hypertrophy."  Dorland's at 274.

Lincoln.  On February 10, 2011, Dr. Ashraf noted that plaintiff had abstained from alcohol and cocaine for two months (Tr. 185-87, see Tr. 197).  She also noted that plaintiff was not experiencing chest pain or shortness of breadth, but was still complaining of orthopnea and exertional dyspnea (Tr. 185).  She diagnosed plaintiff with congestive heart failure, stage two chronic kidney disease and benign essential hypertension (Tr. 186).

Although plaintiff saw Dr. Ashraf for several follow-up appointments, at the time of the ALJ's decision, the only other document in the record authored by Dr. Ashraf was a form Medical Source Statement of Ability to do Work-Related Activities (Physical) that she completed on July 11, 2011 (Tr. 451-53).  In that form, Dr. Ashraf wrote that in an eight-hour workday plaintiff could not (1) sit more than five to six hours, (2) stand more than one hour or (3) walk more than one hour (Tr. 399).  Dr. Ashraf indicated that plaintiff had limited ability to pull and push and could only occasionally carry more than ten pounds (Tr. 398).  Regarding plaintiff's postural abilities, Dr. Ashraf wrote that plaintiff (1) could not climb ladders or scaffolds or walk a block at a reasonable pace on an uneven surface or use public transportation, (2) could only occasionally climb ramps or stairs and (3) could frequently balance, stoop, kneel, crouch and crawl

(Tr. 401, 403).  She also wrote that plaintiff could never tolerate heights, humidity and extreme heat or cold, and that he could only occasionally (1) operate mechanical parts or motor vehicles and (2) tolerate pulmonary irritants and vibrations (Tr. 402).  Finally, Dr. Ashraf indicated that plaintiff's limitations would last longer than a twelve-month period (Tr. 403).

On March 21, 2011, Dr. Dipti Joshi examined plaintiff at the SSA's request (Tr. 356-59).  Plaintiff reported that he was experiencing intermittent chest pain, shortness of breadth and palpitations; plaintiff explained that these symptoms occurred when he would walk more than five blocks at a time (Tr. 356).  Plaintiff also reported that he was able to take care of his personal hygiene and that he could watch television, listen to the radio and read (Tr. 357).  Upon physical examination, Dr. Joshi wrote that plaintiff's vision was 20/70 on a Snellen Chart at twenty feet (Tr. 357).  Dr. Joshi heard distant breadth sounds in plaintiff's lungs, which were worse in the right lower lung fields (Tr. 358).  Dr. Joshi wrote that plaintiff suffered from (1) hypertension, (2) "[m]ention of stroke, possibly transient

ischemic[10] attack," (3) "[m]yocardial infarction[11] with mention
of need for pacemaker and dyspnea on exertion of five [b]locks
with last ejection fracture [sic] at 28%" and (4) asthma or
chronic obstructive pulmonary disease (Tr. 358-59).  In the
medical source statement, Dr. Joshi wrote that it was unclear
whether plaintiff required a defibrillator or a pacemaker and
concluded that plaintiff should avoid strenuous exertion, dust,
smoke and fumes (Tr. 359).

        On April 4, 2011, an SSA employee, L. Roody, reviewed
plaintiff's medical records, with the exception of Dr. Ashraf's
report, and completed a form Physical Residual Functional Capac-
ity ("RFC") Assessment (Tr. 373-312).  In the form, Mr. Roody
indicated that plaintiff suffered from the following exertional
limitations:  (1) he could occasionally lift less than 20 pounds,
(2) he could frequently lift less than 10 pounds, (3) he could
stand or walk with normal breaks for about six hours in an eight-
hour workday and (4) he could sit with normal breaks for about
six hours in an eight-hour workday (Tr. 373-74).  Roody found no
postural, manipulative, visual or communicative limitations, but

_____

        [10]Ischemia is a "deficiency of blood in a part, due to
functional constriction or actual obstruction of a blood vessel."
Dorland's at 857.

        [11]Myocardial infarction is the "gross necrosis of the
myocardium, as a result of interruption of the blood supply to
the area, as in coronary thrombosis."  Dorland's at 834.

found that plaintiff should avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation (Tr. 375-76).

On November 15, 2011, a cardiology fellow at Bellevue examined plaintiff and concluded that plaintiff did not require a defibrillator because his ejection fraction had improved to 45% (Tr. 408-09).

On January 1, 2012, Dr. Gerald Galst reviewed plaintiff's medical records and provided answers to interrogatories provided by the ALJ (Tr. 411-414).  He concluded that plaintiff did not meet or equal any of the impairments listed in 20 C.F.R. Pt. 404, Sbpt. P, App. 1 and that plaintiff could perform the full range of light work, including his past work as a parking attendant (Tr. 413-14).

The record also contains documents submitted by plaintiff to the Appeals Council relating to plaintiff's appointments at Lincoln.  On March 31, 2011, plaintiff met with Dr. Ashraf and said that he was experiencing exertional dyspnea when walking more than five blocks (Tr. 456).  Dr. Ashraf confirmed her earlier diagnoses and added a diagnosis of diabetes (Tr. 456). Plaintiff attended follow-up appointments with Dr. Ashraf and other physicians regarding his diabetes on May 9, 2011, September 28, 2011 and November 9, 2011.  The notes from these appointments show no significant changes in plaintiff's condition; plaintiff

was still experiencing shortness of breadth and fatigue after walking more than six blocks (Tr. 438-41, 443-46, 451-53).

On August 26, 2011, plaintiff met with Dr. Peter Kaganowicz.  Plaintiff complained of right shoulder pain, right-sided neck pain and numbness in the ring finger of his right hand (Tr. 448).  Upon examination, Dr. Kaganowicz diagnosed plaintiff with right shoulder pain and ruled out osteoarthritis (Tr. 488).

On January 12, 2012, plaintiff underwent laser surgery on his right eye to correct a retinal vein occlusion;[12] there are no documents in the record concerning his recovery (Tr. 415).

III.  Analysis

    A.  Applicable
       Legal Principles

      1.  Standard of Review

The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is based upon an erroneous legal standard.  42 U.S.C. § 405(g); Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per

---

[12]Occlusion is "an obstruction or a closing off."  Dorland's at 1165.

curiam); Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012);
Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008).

    The Court first reviews the Commissioner's decision for
compliance with the correct legal standards; only then does it
determine whether the Commissioner's conclusions were supported
by substantial evidence. Tejada v. Apfel, 167 F.3d 770, 773-74
(2d Cir. 1999); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir.
1987); Ellington v. Astrue, 641 F. Supp. 2d 322, 327-28 (S.D.N.Y.
2009) (Marrero, D.J.). "Even if the Commissioner's decision is
supported by substantial evidence, legal error alone can be
enough to overturn the ALJ's decision." Ellington v. Astrue,
supra, 641 F. Supp. 2d at 328; accord Johnson v. Bowen, supra,
817 F.2d at 986. However, "where application of the correct
legal principles to the record could lead to only one conclusion,
there is no need to require agency reconsideration." Johnson v.
Bowen, supra, 817 F.2d at 986.

    "'Substantial evidence' is 'more than a mere scintilla.
It means such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion.'" Talavera v. Astrue,
supra, 697 F.3d at 151, quoting Richardson v. Perales, 402 U.S.
389, 401 (1971). Consequently, "[e]ven where the administrative
record may also adequately support contrary findings on particu-
lar issues, the ALJ's factual findings 'must be given conclusive

effect' so long as they are supported by substantial evidence."
Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam),
quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).
Thus, "[i]n determining whether the agency's findings were
supported by substantial evidence, 'the reviewing court is
required to examine the entire record, including contradictory
evidence and evidence from which conflicting inferences can be
drawn.'"  Selian v. Astrue, supra, 708 F.3d at 417, quoting
Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per
curiam).  Where, as here, the claimant has submitted new evidence
to the Appeals Council following the ALJ's decision, such evi-
dence is considered part of the administrative record.  See Brown
v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Perez v.
Chater, 77 F.3d 41, 46 (2d Cir. 1996).

            2.  Determination
                of Disability

        A claimant is entitled to SSI benefits if he or she can
establish an "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment . . . which has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 1382c(a)(3)(A); see also Barnhart v. Walton, 535 U.S.

212, 217-22 (2002) (both impairment and inability to work must last twelve months).[13]  The impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques," 42 U.S.C. § 1382c(a)(3)(D), and it must be

> of such severity that [the claimant] is not only unable to do his previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [the claimant] lives, or whether a specific job vacancy exists for [the claimant], or whether [the claimant] would be hired if [the claimant] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner must consider both objective and subjective factors when assessing a disability claim, including: (1) objective medical facts and clinical findings; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability to which the claimant and family or others testify; and (4) the claimant's educational background, age and work experience. Brown v. Apfel, supra, 174 F.3d at 62; DiPalma v. Colvin, 951 F. Supp. 2d 555, 565 (S.D.N.Y. 2013) (Peck, M.J.).

---

[13]The standards that must be met to receive SSI benefits under Title XVI of the Act are the same as the standards that must be met in order to receive Disability insurance benefits under Title II of the Act.  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, cases addressing the latter are equally applicable to cases involving the former.

"In evaluating disability claims, the SSA follows a five-step process mandated by the relevant regulations." <u>Selian v. Astrue</u>, <u>supra</u>, 708 F.3d at 417.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Commissioner will consider him [<u>per</u> <u>se</u>] disabled . . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

<u>Selian v. Astrue</u>, <u>supra</u>, 708 F.3d at 417-18 (alterations in original), <u>quoting</u> <u>Talavera v. Astrue</u>, <u>supra</u>, 697 F.3d at 151; <u>see also</u> 20 C.F.R. § 416.920; <u>Barnhart v. Thomas</u>, <u>supra</u>, 540 U.S. at 24-25; <u>Butts v. Barnhart</u>, 388 F.3d 377, 383 (2d Cir. 2004), <u>amended</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u> <u>on</u> <u>rehearing</u>, 416 F.3d 101 (2d Cir. 2005).

Step four requires that the ALJ make a determination as to the claimant's RFC to perform work available to him.  <u>See</u> <u>Genier v. Astrue</u>, <u>supra</u>, 606 F.3d at 49.  RFC is defined in the applicable regulations as "the most [the claimant] can still do

15

despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  To determine RFC, the ALJ "identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-relat-ed abilities on a function-by-function basis, including the functions in paragraphs (b),(c), and (d) of 20 [C.F.R. §§] 404.1545 and 416.945."  Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (per curiam), quoting Social Security Ruling 96-8p, Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184 at *1.  The results of this assessment determine the claimant's ability to perform the exertional demands of sustained work, and may be categorized as sedentary, light, medium, heavy, or very heavy.  20 C.F.R. § 416.967; see Rodriquez v. Apfel, 96 Civ. 8330 (JGK), 1998 WL 150981 at *7 n.7 (S.D.N.Y. Mar. 31, 1998) (Koeltl, D.J.).

The claimant bears the initial burden of proving disability with respect to the first four steps.  Selian v. Astrue, supra, 708 F.3d at 418; Burgess v. Astrue, supra, 537 F.3d at 128.  Once the claimant has satisfied this burden, the burden shifts to the Commissioner to prove the final step -- that the claimant's RFC allows the claimant to perform some work other than the claimant's past work.  Selian v. Astrue, supra, 708 F.3d at 418; Butts v. Barnhart, supra, 388 F.3d at 383.

3.   Medical Improvement

Even after an individual has been found to be entitled
to SSI benefits, his or her benefits may be terminated if there
is substantial evidence that a medical improvement has restored
his or her ability to work.  42 U.S.C. § 1382c(a)(4); Veino v.
Barnhart, 312 F.3d 578, 588 (2d Cir. 2002);  De Leon v. Sec'y of
Health & Human Servs., 734 F.2d 930, 937 (2d Cir. 1984).  A
medical improvement means "any decrease in the medical severity
of [the claimant's] impairment(s) which was present at the time
of the most recent favorable medical decision that [the claimant]
w[as] disabled or continued to be disabled."  20 C.F.R. §
416.994(b)(1)(i).

"A determination that there has been a decrease in
medical severity must be based on changes (improvement) in the
symptoms, signs and/or laboratory findings associated with [the
claimant's] impairment(s)."  20 C.F.R. § 416.994(b)(1)(i).
"Thus, in order to 'determin[e] whether medical improvement has
occurred,' the SSA must compare 'the current medical severity of
th[e] impairment[] . . . to the medical severity of that impair-
ment[] at th[e] time' of the most recent favorable medical
decision."  Veino v. Barnhart, supra, 312 F.3d at 586-87 (quoting

17

20 C.F.R. § 404.1594(b)(7)); <u>Batista v. Barnhart</u>, 326 F. Supp. 2d 345, 352 (E.D.N.Y. 2004).

The SSI regulations set forth a seven-step process[14] to determine whether a medical improvement has occurred.  First, the Commissioner considers whether the claimant has an impairment which meets or medically equals an impairment which is listed in Appendix 1 of the regulations.  If not, the Commissioner next considers whether there has been a medical improvement.  If there has been such an improvement (or certain exceptions apply), the Commissioner must determine whether the improvement has resulted in an increase in the claimant's RFC.  If so, the Commissioner then asks whether the claimant's combination of impairments is still severe.  If they are, the Commissioner must assess whether the claimant can perform substantial gainful activity in light of the claimant's RFC, age, education, and work experience.  20 C.F.R. § 416.994(b)(5)(i)-(Vii).  The seven-step process applies to situations where the ALJ must determine whether the benefits a claimant was awarded in a prior adjudication should continue, as

---

[14]When applying the medical improvement standard to a recipient of disability insurance benefits, the regulations establish an identical process with the exception that there is an inquiry added before step one.  <u>See</u> 20 C.F.R. § 404.1594(f)(1)-(8).  Although the SSI regulations were amended to include an eighth step in 2012, I apply the version of 20 C.F.R. § 415.994 in effect when the ALJ rendered his decision.  <u>See</u> <u>Lowry v. Astrue</u>, 474 F. App'x 801, 804 n.2 (2d Cir. 2012).

well as to situations where the ALJ must decide whether to award the claimant benefits for a finite, or "closed," period.  Carbone v. Astrue, No. 08-CV-2376 (NGG), 2010 WL 3398960 at *13 (E.D.N.Y. Aug. 16, 2010) (collecting cases); Chavis v. Astrue, No. 5:07-CV-0018 (LEK/VEB), 2010 WL 624039 at *6 (N.D.N.Y. Feb. 18, 2010).

The burden is on the Commissioner to show, by substantial evidence, that a medical improvement has taken place. Deronde v. Astrue, Civil Action 7:11-998, 2013 WL 869489 at *3 (N.D.N.Y. Feb. 11, 2013) (Report & Recommendation) ("Under this analytical model, the burden rests with the Commissioner at every step."), adopted at, 2013 WL 868076 (N.D.N.Y. Mar. 7, 2013); King v. Astrue, No. 10-CV-6219, 2012 WL 253411 at *5 (W.D.N.Y. Jan. 26, 2012); Chavis v. Astrue, supra, 2010 WL 624039 at *4.

4.  Development of the Record

"[I]t is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'"  Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009), quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009).

19

> Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. <u>Echevarria v. Secretary of Health & Human Servs.</u>, 685 F.2d 751, 755 (2d Cir. 1982).  This duty exists even when the claimant is represented by counsel . . . . The [Commissioner's] regulations describe this duty by stating that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."  20 C.F.R. § 416.912(d).

<u>Perez v. Chater</u>, <u>supra</u>, 77 F.3d 47; <u>see</u> <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004) ("We have stated many times that the ALJ generally has an affirmative obligation to develop the administrative record . . . . ") (internal quotations and citation omitted); <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."); <u>Tejada v. Apfel</u>, <u>supra</u>, 167 F.3d at 774 (same); <u>Van Dien v. Barnhart</u>, 04 Civ. 7259 (PKC), 2006 WL 785281 at *14 (S.D.N.Y. Mar. 24, 2006) (Castel, D.J.) (same).

The regulations provide that "[w]hen the evidence we receive from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . or other medical source to determine whether the additional

20

information we need is readily available."[15]  20 C.F.R.

§ 416.912(e); see also Perez v. Chater, supra, 77 F.3d at 47.

Where the ALJ has failed to develop the record ade-
quately, remand to the Commissioner for further development is
appropriate.  See Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.
1999).

B.  The ALJ's Decision

The ALJ applied the five-step analysis described above
and determined that plaintiff was disabled from February 1, 2011
to February 9, 2012.

At step one, the ALJ determined that plaintiff had not
engaged in substantial gainful activity since February 1, 2011
(Tr. 31).

As step two, the ALJ determined that plaintiff was
suffering from the following severe impairments from February 1,
2011 to February 9, 2012:  (1) congestive heart failure, (2)
cocaine and alcohol abuse, (3) bronchial asthma, (4) stage two

---

[15]The Commissioner amended these regulations in 2012 to
remove former paragraph (e) and the duty it imposed on ALJs to
re-contact a disability claimant's treating physician under
certain circumstances.  However, the earlier version of Section
416.912(e) quoted here was in effect when the ALJ adjudicated
plaintiff's SSI claim, and, therefore, applies here.  Lowry v.
Astrue, supra, 474 F. App'x at 804 n.2.

chronic kidney disease and (5) retinal vein occlusion of the
right eye (Tr. 32).

At step three, the ALJ determined that from February 1,
2011 to February 9, 2012, plaintiff's congestive heart condition
met the criteria of sections 4.02 and 12.09 of 20 C.F.R. Pt. 404,
Subpt. P, App. 1 (Tr. 32).  In making this determination, the ALJ
relied on plaintiff's statements that his ejection fraction was
down to 20% and that he suffered from difficulty breathing and
chest pain.  The ALJ found that plaintiff's statements as to the
intensity, persistence and limiting effects of his symptoms were
"generally credible from February 1, 2011 through February 9,
2012" (Tr. 33).

The ALJ also relied on plaintiff's medical records.  He
wrote that the hospital records from December 2010 and January
2011 indicated that plaintiff was experiencing chronic dyspnea,
severely reduced left ventricular ejection fraction of 22%,
cardiomegaly and other symptoms of severe congestive heart
failure (Tr. 33).  The ALJ also noted that a number of objective
test results confirmed the findings in the hospital records (Tr.
33-34).

Finally, the ALJ weighed the opinion evidence.  He
noted that Dr. Ashraf, plaintiff's treating physician, found that
the symptoms from plaintiff's various medical conditions imposed

serious limitations on his physical activities (Tr. 34).  He afforded Dr. Ashraf's opinion significant weight because it was well supported by plaintiff's inpatient hospitalization and outpatient clinical records (Tr. 34).  He also afforded significant weight to the opinion of Dr. Galst that plaintiff's condition would meet the requirements of Listing 4.02 for roughly twelve months (Tr. 34).

From this evidence the ALJ determined that plaintiff was disabled from February 1, 2011, the date he filed his SSI application, to February 9, 2012 (Tr. 34).  He also wrote "[t]he claimant clearly exhibited Listing-level symptoms . . . from November 2010 . . . until November 2011 . . . .  However, because SSI benefits are not payable until the date of the application, . . . the claimant's disability is deemed to have beg[un] on the filing date . . ." (Tr. 35).

The ALJ then applied the medical improvement analysis described above and found that plaintiff was not disabled for any period after February 9, 2012.

At step one, the ALJ found that plaintiff's existing impairments no longer met or medically equaled the impairments listed in 20 C.F.R. Pt. 404, Sbpt. P, App. 1 (Tr. 35).  In making this determination, the ALJ relied on the interrogatory answers provided Dr. Galst, which stated in substance that because

plaintiff had improved substantially with medical treatment and the cessation of his substance abuse, he no longer met the requirements of Listing 4.02 (Tr. 35).

At step two, the ALJ found that the severity of plaintiff's impairments had diminished, and that a medical improvement had occurred (Tr. 35).  The ALJ relied on records from Bellevue from November 2011, which indicated that plaintiff no longer experienced chest pain, could tolerate greater levels of exercise and had an ejection fraction of 45% (Tr. 35).

At step three, the ALJ assessed whether plaintiff's medical improvement had increased his RFC (Tr. 35).

The ALJ first evaluated plaintiff's statements regarding his symptoms.  He determined that plaintiff's statements as to the intensity, persistence and limiting effects of his symptoms were not credible (Tr. 36).  The ALJ noted that no medical evidence following plaintiff's November exercise test demonstrated that he was still disabled (Tr. 36).  The ALJ found that plaintiff's statements were inconsistent with his daily activities, his treatment and his medication regimen (Tr. 36).

The ALJ next assessed the opinion evidence.  He gave significant weight to Dr. Galst's opinion that plaintiff could perform light work (Tr. 37).  The ALJ noted that the only opinion evidence dated after November 2011 was the opinion of Dr. Galst,

24

and that his opinion was supported by the November 2011 cardiology note and not contradicted by any other substantial evidence (Tr. 37).

From this evidence the ALJ concluded that after February 10, 2012, plaintiff had the RFC to perform the full range of light work (Tr. 35).

The ALJ did not make explicit findings at step four or five.  At step six, the ALJ determined that plaintiff could not perform any relevant past work (Tr. 63).

At step seven, the ALJ concluded that, in light of plaintiff's age, education, work experience and RFC, Vocational Rule 202.17 directed a finding of "not disabled" (Tr. 37).

Consequently, the ALJ determined that plaintiff's disability ended on February 10, 2012 (Tr. 37).

C.   Analysis of the
     ALJ's Decision

Plaintiff challenges two aspects of the ALJ's post-medical-improvement RFC determination.  First, plaintiff contends that the ALJ committed legal error when he failed to develop the record by obtaining an updated opinion from Dr. Ashraf (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, dated Oct. 29, 2013, (Docket Item 20) ("Pl.'s Mem.")

at 6-8).   Second, plaintiff contends that the ALJ's credibility
assessment was not reached by the correct legal standards and was
not supported by substantial evidence (Pl.'s Mem. at 12-15).   The
Commissioner responds that (1) the ALJ took several steps to
develop the record that obviated the need to re-contact Dr.
Ashraf and (2) that the ALJ's credibility assessment was free of
legal error and was supported by substantial evidence (Defen-
dant's Brief in Support of the Commissioner's Motion for Judgment
on the Pleadings, dated Feb. 11, 2014, (Docket Item 25) ("Comm'r
Mem.") at 17, 25).

       1.   The ALJ's
         Development
         of the Record

      The regulations require that the ALJ "make every
reasonable effort[16] to help [the claimant] get medical reports
from [his or her] medical sources . . . ."   20 C.F.R. §
416.912(d).   Where, as here, the claimant appears <u>pro se</u>, this
obligation is heightened.   <u>Cruz v. Sullivan</u>, 912 F.2d 8, 11 (2d
Cir. 1990); <u>Jones v. Apfel</u>, 66 F. Supp. 2d 518, 523 (S.D.N.Y.

---

    [16]"Every reasonable effort means that [the ALJ] will make an
initial request for evidence from [the claimant's] medical source
and, at any time between 10 and 20 calendar days after the
initial request, if the evidence has not been received, [the ALJ]
will make one followup request to obtain the medical evidence
necessary to make a determination."   20 C.F.R. § 416.912(d)(1).

1999) (Pauley, J.).  Reasonable efforts when the claimant appears pro se include, inter alia, (1) issuing and enforcing subpoenas for any relevant reports or (2) advising the claimant of the importance of such reports.  Myers v. Astrue, No. 7:06-CV-0331 (NAM/RFT), 2009 WL 2162541 at *2 (N.D.N.Y. July 17, 2009); Almonte v. Apfel, 96 Civ. 1119 (JGK), 1998 WL 150996 at *7 (S.D.N.Y. Mar. 31, 1998) (Koeltl, D.J.).

          The ALJ's duty to help the claimant obtain reports from his or her treating physicians is also affected by the scope of the ALJ's disability determination.  Before making a determination that a claimant has experienced a medical improvement that terminates his or her disability, the ALJ must develop the record regarding two periods:  the period during which the claimant was most recently found to have been disabled and (2) the period during which plaintiff is alleged to have experienced the medical improvement that has ended his or her disability.  See Veino v. Barnhart, supra, 312 F.3d at 587; accord Deronde v. Astrue, supra, 2013 WL 869489 at *12-*13; Logins v. Astrue, No. 10-CV-6060 (CJS), 2011 WL 2555364 at *10 (W.D.N.Y. June 27, 2011); see also 20 C.F.R. § 416.994(b)(1).  This duty logically flows from the requirement that, in assessing whether a medical improvement has taken place, the ALJ must compare evidence from the last period in which the claimant was found to be disabled with

27

evidence from the period in which the claimant is alleged to have experienced improvement.  Veino v. Barnhart, supra, 312 F.3d at 586-87.

Here, the ALJ separated the documents in the record by date -- those that predated November 2011 and those from November 2011 onward.  In finding that plaintiff was disabled from February 2011 to February 2012, with the exception of Dr. Galst's opinion the ALJ relied on pre-November 2011 documents (Tr. 34). In finding that plaintiff's disability ended in February 2012, he relied exclusively on documents from November 2011 onward (Tr. 35-37).  In bifurcating the evidence in this manner, however, ALJ effectively gave Dr. Ashraf's July 11, 2011 opinion an expiration date (Tr. 34 ("Significant weight is given to Dr. Ashraf, who's opinion is well supported, at least at the time that it was written . . . ."))  Indeed, in finding that plaintiff experienced medical improvement in November 2011, the ALJ did not discuss the opinions of Dr. Ashraf or Dr. Joshi in weighing Dr. Galst's January 1, 2012 opinion that plaintiff's could perform light work.  In adopting Dr. Galst's opinion that plaintiff's disability had ended, the ALJ noted "the lack of any other substantial evidence indicating that plaintiff had serious problems," and stated that "[t]here [wa]s no other medical source

28

opinion dated after the November 2011 cardiology note that [wa]s
countervailing to Dr. Galst's opinion" (Tr. 37).

Under these circumstances, I conclude that the ALJ
erred in not taking reasonable efforts to secure an updated
report from Dr. Ashraf.  The ALJ's decision, plaintiff's testi-
mony and plaintiff's medical records all demonstrate that Dr.
Ashraf continued to treat plaintiff after November 15, 2011 (Tr.
20-21, 34, 411, 438-41, 426).  However, because the ALJ did not
evaluate Dr. Ashraf's or Dr. Joshi's opinions in addressing
whether plaintiff experienced a medical improvement in November
2011, there is no report from a treating or examining source
opining on the severity of plaintiff's impairments or his func-
tional limitations for that period.  Indeed, the only documents
in the record pertaining to plaintiff's medical improvement are
(a) interrogatory answers from a non-examining physician, (b)
plaintiff's testimony which the ALJ admitted "did not address any
improvement in his condition" and (c) a cardiology note stating
that plaintiff did not require a defibrillator and exhibited an
improved ejection fraction rate of 45% (Tr. 35-37).  It is
inconsistent with the ALJ's affirmative duty to develop the
record to deny benefits without addressing the opinions of
plaintiff's treating source or even taking steps to secure such
opinions.  Given the paucity of information on which the ALJ

29

relied, the existing opinions that he found inapplicable and his
heightened duty to develop the record when the claimant is pro
se, the ALJ should have taken efforts to obtain an updated
opinion from Dr. Ashraf.  See Deronde, supra, 2013 WL 869489 at
*13-*14 (holding that the ALJ should have re-contacted plain-
tiff's treating physician where his ambiguous notes and plain-
tiff's testimony was the only evidence regarding plaintiff's
post-medical-improvement RFC); Batista v. Barnhart, supra, 326 F.
Supp. 2d at 354 (holding that the ALJ failed to develop the
record regarding plaintiff's current condition by not requesting
updated RFC assessments from his treating sources or advising
plaintiff of the importance of such assessments).

          The Commissioner argues that "every reasonable effort
was made to develop the record," including affording plaintiff a
consultative examination, leaving the record open regarding
plaintiff's eye impairment and asking an impartial medical expert
to review the record and assess plaintiff's functional limita-
tions (Comm'r Mem. at 17).  This argument is unpersuasive.  As
previously discussed, the ALJ erred in assessing plaintiff's
medical improvement because he found that the reports of the
consultative and treating physicians (Drs. Joshi and Ashraf
respectively) were outdated by November 2011 and failed to make
efforts to obtain updated reports.  The Commissioner cannot argue

that the record was fully developed regarding plaintiff's medical improvement on the ground that plaintiff was given a consultative examination when the ALJ failed to consider the Dr. Joshi's report from that examination in assessing plaintiff's medical improvement.  In addition, the case law is clear that where, as here, the claimant appears pro se, the ALJ must do more than simply leave the record open to satisfy the affirmative obligation to develop the record.  Losco v. Heckler, 604 F. Supp. 1014, 1020 n.4 (Ward, D.J.) ("[T]he ALJ cannot satisfy his 'heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts,' . . . merely by extending to a pro se claimant the opportunity to present relevant evidence."), quoting Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982).  Finally, while the ALJ did develop the record by posing interrogatories to Dr. Galst, this does not replace his obligation to make every reasonable effort to secure an opinion from plaintiff's treating physician, Dr. Ashraf.  Kebreau v. Astrue, No. 11 CV 13 (RJD), 2012 WL 3597377 at *1 (E.D.N.Y. Aug. 20, 2012); Harris v. Astrue, No. 08-CV-3374 (JG), 2009 WL 8500986 at *4 (E.D.N.Y. Jan. 20, 2009).

        Accordingly, because the ALJ failed to develop the record, his post-medical-improvement RFC determination should be

overturned.[17] <u>Veino v. Barnhart</u>, <u>supra</u>, 312 F.3d at 588.  On
remand, the ALJ should make efforts to acquire an updated opinion
from Dr. Ashraf and any of her post-November 2011 treatment
records so that he may evaluate whether plaintiff had experienced
a medical improvement that ended his disability properly.

                2.   The ALJ's
                     Credibility
                     <u>Determination</u>

        Plaintiff next challenges the ALJ's evaluation of his
post-medical-improvement RFC on the ground that the ALJ's adverse
credibility determination was reached by applying an incorrect
legal standard and was not supported by substantial evidence
(Pl.'s Mem. at 12-15).

            When determining a claimant's RFC, the ALJ is required
            to take the claimant's reports of pain and other limi-
            tations into account, 20 C.F.R. § 416.929; <u>see</u>
            <u>McLaughlin v. Sec'y of Health, Educ. & Welfare</u>, 612
            F.2d 701, 704-05 (2d Cir. 1980), but is not required to
            accept the claimant's subjective complaints without
            question; he may exercise discretion in weighing the
            credibility of the claimant's testimony in light of the
            other evidence in the record.  <u>Marcus v. Califano</u>, 615
            F.2d 23, 27 (2d Cir. 1979).

            The regulations provide a two-step process for
            evaluating a claimant's assertions of pain and other

_____

        [17]In light of my determination that the ALJ committed legal
error, I make no determination as to whether the ALJ's post-
medical-improvement RFC determination was supported by
substantial evidence.

limitations.  At the first step, the ALJ must decide
whether the claimant suffers from a medically determi-
nable impairment that could reasonably be expected to
produce the symptoms alleged.  20 C.F.R. § 404.1529(b).
That requirement stems from the fact that subjective
assertions of pain alone cannot ground a finding of
disability.  20 C.F.R. § 404.1529(a).  If the claimant
does suffer from such an impairment, at the second
step, the ALJ must consider "the extent to which [the
claimant's] symptoms can reasonably be accepted as
consistent with the objective medical evidence and
other evidence" of record.  Id.  The ALJ must consider
"[s]tatements [the claimant] or others make about [his]
impairment(s), [his] restrictions, [his] daily activi-
ties, [his] efforts to work, or any other relevant
statements [he] make[s] to medical sources during the
course of examination or treatment, or to [the agency]
during interviews, on applications, in letters, and in
testimony in [its] administrative proceedings."  20
C.F.R. § 404.1512(b)(3); see also 20 C.F.R. §
404.1529(a); S.S.R. 96-7p.

Genier v. Astrue, supra, 606 F.3d 49.

It is "within the discretion of the [Commissioner] to

evaluate the credibility of plaintiff's complaints and render an

independent judgment in light of the medical findings and other

evidence regarding the true extent of such symptomatology."

Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995)

(Leisure, D.J.); accord Mimms v. Heckler, 750 F.2d 180, 186 (2d

Cir. 1984); Evans v. Astrue, 783 F. Supp. 2d 698, 710-11

(S.D.N.Y. 2011) (Gorenstein, M.J.); see Aponte v. Sec'y, Dep't of

Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984); Carroll

v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir.

1983) ("It is the function of the [Commissioner], not [the

33

reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."). "Accordingly, where the ALJ's decision to discredit a claimant's subjective complaints is supported by substantial evidence, [the Court] must defer to his findings." Calabrese v. Astrue, 358 F. App'x 274, 277 (2d Cir. 2009), citing Aponte v. Sec'y, Dep't of Health & Human Servs., supra, 728 F.2d at 591; Gates v. Astrue, 338 F. App'x 46, 48 (2d Cir. 2009).

        In this case the ALJ summarized plaintiff's testimony and wrote that "it did not address any improvement in [plaintiff's] condition" (Tr. 35).  The ALJ then applied the two-step process and found at step two that plaintiff's "statements concerning the intensity, persistence and limiting effects of [plaintiff's] symptoms [we]re not credible beginning February 10, 2012, to the extent they [we]re inconsistent with the residual functional capacity assessment for the reasons explained below" (Tr. 36).  The ALJ explained that "there [wa]s no medical evidence following the November 2011 exercise test which shows that his conditions remain[ed] as disabling as he testifie[d]" (Tr. 36).  The ALJ also found that plaintiff's testimony was not consistent with plaintiff's daily activities, the extent of his treatment following his hospitalization in January 2011 and his medications and their side effects (Tr. 36).

34

I conclude that the ALJ's credibility determination was reached using the correct legal standards. Consistent with the regulations, the ALJ applied the two-step credibility framework, and, at step two evaluated whether plaintiff's testimony was consistent with the objective medical findings and the factors set forth in 20 C.F.R. § 416.929(b)(3). In addition, the ALJ's decision provided specific reasons for discrediting plaintiff's testimony and cited evidence which the ALJ perceived to be inconsistent with plaintiff's testimony (Tr. 36).

Plaintiff argues that the phrasing 'plaintiff's state-ments were not credible to the extent they were inconsistent with the residual functional capacity assessment' suggests that the ALJ first determined plaintiff's RFC and then used that determi-nation to discount plaintiff's non-conforming symptoms (Pl.'s Mem. at 12). Plaintiff is correct that if the ALJ had used plaintiff's RFC to discount his testimony, his credibility determination would have been flawed. This analysis is problem-atic, because it suggests that the ALJ "made a determination with respect to plaintiff's overall RFC and then used that RFC to discount plaintiff's non-conforming allegations and resulting limitations." Norman v. Astrue, 10 Civ. 5839 (ALC)(HBP), 912 F. Supp. 2d 33, 86 (S.D.N.Y. 2012) (Carter, D.J.) (adopting Report and Recommendation). This is improper, as a determination of the

35

plaintiff's credibility should take place <u>before</u> an RFC determi-
nation.  <u>See</u> <u>Norman v. Astrue</u>, <u>supra</u>, 912 F. Supp. 2d at 44,
<u>citing</u> <u>Meadors v. Astrue</u>, 370 F. App'x 179, 184 (2d Cir. 2010);
<u>see</u> <u>also</u> <u>Taylor v. Comm'r of Soc. Sec.</u>, 13 Civ. 5995 (VB), 2014
WL 2465057 at *12 (S.D.N.Y. May 21, 2014) (Briccetti, D.J.)
(adopting Report & Recommendation); <u>Agapito v. Colvin</u>, 12 Civ.
2108 (PAC)(HBP), 2014 WL 774689 at *22 (S.D.N.Y. Feb. 20, 2014)
(Crotty, D.J.) (adopting Report & Recommendation); <u>Seabrook v.</u>
<u>Astrue</u>, 11 Civ. 5642 (GBD)(KNF), 2013 WL 1340134 at *3 (S.D.N.Y.
Mar. 26, 2013) (Daniels, D.J.) (adopting Report and Recommenda-
tion).  In context, however, the language used by the ALJ demon-
strates that the ALJ did not pre-determine plaintiff's RFC and
use it to discount plaintiff's non-conforming symptoms.  Rather
the ALJ found that plaintiff's statements were not credible
"after considering the evidence of record" (Tr. 36).  Moreover,
the ALJ's decision explicitly states that he discredited plain-
tiff's statements because he found them to be inconsistent with
the objective medical evidence, plaintiff's daily activities, the
rigor of plaintiff's treatment and plaintiff's medications and
their side effects (Tr. 36).  Accordingly, I reject plaintiff's
argument that the ALJ applied the wrong legal standard in dis-
crediting plaintiff's testimony.

However, to the extent that the ALJ relied on the absence of objective medical evidence from November 2011 onward to discredit plaintiff's testimony, his analysis was flawed.  As discussed above, the ALJ failed to develop the record with respect to that period and the absence of evidence surely skewed his view of whether medical record lent support to, was consistent with or contradicted plaintiff's testimony.  Given the mix of reasons the ALJ gave for discrediting plaintiff's statements about his symptoms, it is difficult to determine how large a role the lack of objective medical findings in late 2011 factored into his decision.  Thus, I cannot make any determination as to whether the ALJ's credibility determination is supported by substantial evidence based on the current record.  See Rosa v. Callahan, supra, 168 F.3d at 82 n.7 ("Because we have concluded that the ALJ was incorrect in her assessment of the medical evidence, we cannot accept her conclusion regarding Rosa's credibility."); accord Brandow v. Comm'r of Soc. Sec., No. 1:05-CV-0917 (NPM/VEB), 2009 WL 2971543 at *5 (N.D.N.Y. Sept. 11, 2009); McCarthy v. Astrue, 07 Civ. 300 (JCF), 2007 WL 4444976 at *9 (S.D.N.Y. Dec. 18, 2007) (Francis, M.J.); see also Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 350 (E.D.N.Y. 2010) ("[T]he absence of treatment evidence from the relevant period is not an indication of the absence of disability; rather, it is an

indication of the ALJ's failure to comply with his obligations .
. . . As such, it cannot serve as a basis to discredit
[p]laintiff's claims.").  On remand the ALJ should re-evaluate
plaintiff's testimony after taking steps to develop the record as
directed in the foregoing section.

IV.  Conclusion

        Accordingly, for all the foregoing reasons, I respect-
fully recommend that plaintiff's motion for judgment on the
pleadings (Docket Item 19) be granted and that the matter be
remanded pursuant to sentence four of 42 U.S.C. § 405(g) for
further proceedings consistent with this report and recommenda-
tion.  I further recommend that the Commissioner's motion for
judgment on the pleadings (Docket Item 24) be denied.

V.  Objections

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Alison J. Nathan, United States District Judge, 40 Centre Street,

Room 2102, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.   Any requests for an extension of time for filing objections must be directed to Judge Nathan.   FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:   New York, New York
         August 6, 2014

                         Respectfully submitted,


                         _____
                         HENRY PITMAN
                         United States Magistrate Judge


Copies transmitted to:

Charles E. Binder, Esq.
Binder & Binder P.C.
Suite 520
60 East 42nd Street
New York, New York   10165

David B. Myers, Esq.
Special Assistant
     United States Attorney
Room 3904
26 Federal Plaza
New York, New York 10278

Susan D. Baird, Esq.
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York  10007